[No. F009870. Fifth Dist. Feb. 16, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY DEAN GOOD, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through IX.

1534

COUNSEL

Harvey R. Zall and Fern M. Lathem, State Public Defenders, under appointments by the Court of Appeal, Linda Y. Chang and Cynthia A. Rodriguez, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Edgar A. Kerry and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

DIBIASO, J.—A jury found defendant Larry Dean Good guilty of manufacturing methamphetamine (Health & Saf. Code, § 11379.6), possession of methamphetamine for sale (Health & Saf. Code, § 11378), and conspiracy to manufacture and/or possess methamphetamine for sale (Pen. Code, § 182). The jury also found to be true the information's three special allegations.

Probation was denied and defendant was sentenced to a 12-year, 8-month state prison term.

FACTS

On June 10, 1987, the Kern County Sheriff's Department received a citizen's complaint of an odor of ether around his residence in Bodfish. Dispatched to the scene at approximately 8:40 p.m., Deputy Jeffrey Swartz spoke to the citizen, smelled the odor, and concluded there was a possible clandestine drug lab operating in the area.

At approximately 11 p.m., after the area was cordoned off for the public's safety, Swartz and another officer went to the front door of a house at 28 Clara Drive. Standing on the front porch was a woman later identified as Renita Harvison Schmidt. Swartz asked who she was and what was going on. The woman did not reply.

The officer walked up to the front door; he smelled ether. After drawing his service revolver, Swartz knocked on the front door, which was already partially open. The knocking pushed the door further open and the officer saw defendant and another man, later identified as Charles Moran, sitting at a kitchen table approximately 20 feet away.

On the kitchen table were a triple beam scale, some tin foil, plastic ziploc baggies, and a white powdery substance. Defendant was holding a spatula and making a chopping motion with it in the white powdery substance, later determined to contain methamphetamine. There were approximately 13 grams of methamphetamine on the table. Also discovered in the kitchen were four plastic baggies containing a total of four hundred and thirteen grams of methamphetamine and a cutting agent.

After defendant and Moran were detained, Swartz and others walked out to a garage or shed area behind the house. In the garage they found a five-gallon can labeled "ether," a one-gallon can labeled "ether," a one-gallon can labeled "alcohol," and a one-gallon can labeled "acetone." A round flask which contained a boiling liquid rested atop an electric burner. Defendant's fingerprints were found on the round flask, as well as on two beakers located in the same vicinity of the garage as the round flask.

A criminalist characterized the operation in the garage as a methamphetamine lab. From the 1200 milliliters of solution boiling in the round flask, the criminalist took a "couple of hundred milliliters" and completed the cooking process. Quantitatively, he was able to obtain 264 grams of methamphetamine. The "cooking" process takes approximately 48 to 72 hours.

## DISCUSSION

### I. HEALTH AND SAFETY CODE SECTION 11379.8

Because the jury found that defendant manufactured a substance containing methamphetamine which exceeded one pound of solid substance by weight, the trial court added three years to defendant's prison term pursuant to Health and Safety Code section 11379.8. Approximately 426 grams of a solid substance containing methamphetamine was seized in the search of the house. Since 454 grams equal 1 pound, in order to make its finding the jury presumably added the 264 grams of methamphetamine which the criminalist obtained from the liquid solution discovered in the garage to the weight of the solid substance found in the home.

Health and Safety Code section 11379.8 provides in pertinent part that any person convicted of manufacturing methamphetamine for sale shall receive an additional three-year term "[w]here the substance[1] exceeds three gallons of liquid by volume or one pound of solid substances by weight." Focusing on the word "or" in the statute, defendant contends there was insufficient evidence to support the jury's finding because there was no proof of the existence in the home of solid substances

---

[1] The word "substance" in this clause means a "substance containing a controlled substance" (Health & Saf. Code, § 11379.8, subd. (a)), such as methamphetamine. (Health & Saf. Code, § 11055, subd. (d)(2).)

exceeding one pound in weight or liquid substances exceeding three gallons in volume. He views the jury's mathematical exercise as improper. In his estimation, the code section does not sanction the conversion of a substance's liquid volume to its solid weight, or the combination of the conversion product with other amounts of the same form of the substance found at the scene, in order to meet the quantitative thresholds of the statute. Defendant cites only the words of the section for his position. We have found no case law or other authorities on this point.

Undeniably, Health and Safety Code section 11379.8 does not in so many words either prohibit or authorize extrapolation and combination as a means by which its conditions may be proved. However, we believe the statute must be read so as to permit such methods of establishing its applicability. The word "substance" is the subject of the phrase "[w]here the substance exceeds three gallons of liquid by volume or one pound of solid substance by weight." The two types of measurement which follow each refer to and apply to the word "substance." The disjunctive "or" signifies that the two measures are alternative scales by which the "substance," regardless of its particular form, may be quantified. For example, if the "substance" seized consists of two and one-half gallons of liquid, the statute would apply if that "substance" (i.e., the liquid) contained more than ("exceed[ed]") one pound of "solid substances by weight."

Defendant's argument is premised upon a reading of the section as if it were worded to restrict its application to the form of the substance at the moment of seizure, i.e., "[w]here the substance, *if a liquid when seized,* exceeds three gallons in volume, or, *if a solid when seized,* exceeds one pound in weight." Under defendant's reasoning, the timing of the seizure would become all important. The authorities would be obliged to intervene either at the precise moment the manufacturing was completed but before the material was processed from a liquid to a solid, or only after the processing was completed. It appears clear the Legislature enacted the provision as a means of combating the increasing problems of drug dealing in California. A construction which would require the police to time their entry by reference to the suspect's production clock would be an unreasonable construction of the statute.

Similarly, so long as there is sufficient evidence, the trier of fact should be permitted to add the common measures of the seized substances in order to meet the statute's standards. Under the defendant's analysis, if the police seized two and seven-eighths gallons of liquid substance and fifteen and seven-eighths ounces of solid substance, the enhancement would not apply even if the liquid contained an eighth of an ounce or more of solids. As noted above, the aim of the statute is focused on drug dealers and drug dealing in California. To require the statute to be applied in the manner

urged by defendant would defeat the purpose of the law and sanction "mischief and absurdity" at the expense of reason and common sense. (*De Young v. City of San Diego* (1983) 147 Cal.App.3d 11, 17-18 [194 Cal.Rptr. 722].)

■ A statute should be interpreted (1) in accord with the ascertained legislative intent "so as to effectuate the purpose of the law"; (2) in a reasonable, commonsense, practical and nontechnical manner consistent with the legislative intent in order to effectuate "wise policy rather than mischief or absurdity"; (3) to give significance, if possible, to every word, phrase, sentence and part in light of the legislative intent, in order to "harmonize" the parts with each other and with the whole, " 'in the context of the statutory framework' "; (4) to account for " ' "matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction" ' "; and (5) to give " 'great weight' " to past " 'consistent administrative construction.' " (*De Young* v. *City of San Diego, supra,* 147 Cal.App.3d at pp. 17-18; 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 94, pp. 146-147.)

■ We believe our construction of Health and Safety Code section 11379.8 to be consonant with those principles, to the extent one or more have relevance here. We thus find no fault with either the evidence of the criminalist's conversion of liquid to solid weight or the jury's addition of the two measures of solid weight for purposes of Health and Safety Code section 11379.8.

II.-IX.*

. . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Martin, Acting P. J., and Ardaiz, J., concurred.

A petition for a rehearing was denied March 16, 1990, and appellant's petitions for review by the Supreme Court were denied May 23, 1990.

---

*See footnote, *ante,* page 1533.