[No. B063231. Second Dist., Div. Seven. June 16, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE RICHARD BURGIO, Defendant and Appellant.

COUNSEL

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, John R. Gorey and Paul M. Roadarmel, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LILLIE, P. J.—The court, sitting without a jury, found defendant[1] guilty of manufacturing methamphetamine (count I), conspiracy to manufacture methamphetamine (count II), possession of methamphetamine for purposes of sale (count III) and conspiracy to possess methamphetamine for sale (count IV); and found true special allegations, as to counts I and II, that the substance containing methamphetamine exceeded 25 gallons of liquid by

---

[1]Codefendants Leonard Saldana Moreno and Cheryl Ann Pemberton are not parties to this appeal.

volume within the meaning of Health and Safety Code[2] section 11379.8, subdivision (a); and, as to counts III and IV, that the substance containing methamphetamine exceeded 3 pounds of solid weight within the meaning of section 11370.4, subdivision (b). He appeals from the judgment and claims error in the imposition of a 10-year enhancement pursuant to section 11379.8, and a concurrent 3-year sentence for a prior foreign conviction for conspiracy to possess and distribute narcotics.

FACTS

A.  *People's Evidence*

On February 27, 1990, Officer Davis, a detective with the narcotics division of the police department and a qualified expert in the manufacture of methamphetamine and sale of controlled substances, accompanied by officers of the department's clandestine lab squad and sheriff's deputies who were engaged in securing the area and making another search, conducted a search of a duplex located in the City of Carson; codefendant Pemberton answered the door; as Davis entered, he observed defendant standing in a small hallway by the living room. A loaded handgun was discovered nearby on a linen closet shelf.[3] The residence contained a vat filled with liquid, various chemicals used in the manufacture of methamphetamine (hydriodic acid, ephedrine and red phosphorus), rubber tubing and assorted flasks, and glassware. Officer Davis also found in the residence finished methamphetamine. In his opinion, the residence was being used almost solely to manufacture methamphetamine. Because of the sheer volume of methamphetamine found in liquid form, as well as the fact the residence had in effect been converted into a methamphetamine processing laboratory, Officer Davis was of the opinion that the methamphetamine was possessed for sale.

Joseph Hourigan, a criminalist with the police department crime laboratory, was called to make an analysis. He drained eight gallons from the bottom portion of the liquid in the vat—the vat contained two immersible liquids: the lower portion comprised approximately eight gallons; the upper portion contained twenty-eight and one-half gallons. The liquid sampled, contained methamphetamine and freon; such ingredients would commonly be processed to produce methamphetamine in solid form. He was unable to determine, without a quantitative analysis, the amount of solid methamphetamine that would be formed from the eight gallons of methamphetamine and

---

[2] All statutory references are to the Health and Safety Code unless otherwise indicated.

[3] Defendant was charged in count V with possession of a firearm by a felon; at the conclusion of the trial the court granted defendant's motion for judgment of acquittal thereon.

freon; subsequently, he extracted a two-ounce sample from the upper portion of the liquid in the vat which was found to consist of methamphetamine and ephedrine.

## B. *Defense*

Defendant testified that in February he was using the premises in Carson to manufacture methamphetamine, and he purchased the items used to manufacture it. In the words of the trial judge, defendant "testified pretty much as an expert under questioning by both sides"—that three ingredients —hydriodic acid, ephedrine and red phosphorus—are required to manufacture methamphetamine; they are mixed in a flask which is placed onto a heating mantle; a condenser is attached to the top of the flask through which a flow of water is run; the ingredients are boiled or "refluxed" causing vapors to rise into a tube and then back down into the flask. The process takes 72 hours and converts some or all of the ephedrine into methamphetamine. The resulting liquid mixture is then filtered to remove solid material, primarily red phosphorus, by placing the mixture in a solution such as that found in the vat recovered during the search. Freon is subsequently used to "strip" the methamphetamine oil. Because freon is the heaviest of the chemicals used, it settles to the bottom of the vat, then it is poured back through the top multiple times in order to strip the remaining methamphetamine oil until the freon no longer produces any solid product.

To transform the eight gallons of liquid methamphetamine and freon drained from the bottom of the vat into the powdery form of methamphetamine, hydrochloric acid would be bubbled through the freon solution. At the time of his arrest, there were approximately 10,000 milliliters of methamphetamine oil in the vat, roughly equivalent to 2½ gallons. The two and one-half gallons of methamphetamine oil would yield approximately three or four pounds of solid methamphetamine upon further processing.

I

### TEN-YEAR ENHANCEMENT PURSUANT TO SECTION 11379.8

Appellant contends that inasmuch as he possessed less than 25 gallons of pure methamphetamine, the trial court erred in imposing the 10-year enhancement pursuant to section 11379.8.[4] Relying primarily upon subdivision (b), appellant argues that the word "substance" used in subdivision (a)(3) must be interpreted to mean a "controlled substance" (pure methamphetamine) rather than a "substance containing a controlled substance" referred

---

[4]Section 11379.8 states in pertinent part:

to in subdivision (a). Thus, he says that to impose the 10-year enhancement, the court must have found that the "controlled substance" (pure methamphetamine) exceeded 25 gallons of liquid by volume or 10 pounds of solid substance by weight.

■ We conclude under case authority and a reasonable and common-sense interpretation consistent with the apparent purpose and intention of the Legislature, that the word "substance" as used in its statutory context (§ 11379.8, subd. (a)(3)), is not "limited" by language in subdivision (b), and was not intended by the Legislature to mean a pure controlled substance as defined in sections 11054 and 11055 (methamphetamine), but a "substance containing a controlled substance."

We first note that the trial court in rather lengthy but well-reasoned comments understood the distinction in finding true beyond a reasonable doubt the allegation that defendant was in possession of a substance containing methamphetamine exceeding 25 gallons of liquid by volume.[5]

Second, case law puts the issue to rest. In *People* v. *Pieters* (1991) 52 Cal.3d 894 [276 Cal.Rptr. 918, 802 P.2d 420], the Supreme Court rejected the same kind of challenge to section 11370.4 appellant makes here to

"(a) Any person convicted of a violation of subdivision (a) of Section 11379.6 with respect to any substance containing a controlled substance which is specified in paragraph (21), (22), or (23) of subdivision (d) of Section 11054, or in paragraph (1) or (2) of subdivision (d) or in paragraph (3) of subdivision (e) or in paragraph (2) of subdivision (f) of Section 11055 shall receive an additional term as follows:

"(1) Where the substance exceeds three gallons of liquid by volume or one pound of solid substances by weight, the person shall receive an additional term of three years.

"(2) Where the substance exceeds 10 gallons liquid volume or three pounds of solid substance by weight, the person shall receive an additional term of five years.

"(3) Where the substance exceeds 25 gallons of liquid volume or 10 pounds of solid substance by weight, the person shall receive an additional term of 10 years.

"In computing the quantities involved in this subdivision, plant or vegetable material seized shall not be included.

"(b) The additional terms provided in this section shall not be imposed unless the allegation that the controlled substance exceeds the amounts provided in this section is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

[5]The court stated in part, "I think, substance, containing a substance, does tell you that the Legislature considered the issue and rejected the argument that it would have to be 25 gallons of methamphetamine. I mean, that's the controlled substance.

"But when you say, substance containing a substance, that's kind of clumsy language. But it seems to me that it pretty well resolved this discussion, and that is resolved in favor of the trier of fact not needing to get into the question of which portions of the 50-gallon drum depicted in Exhibit 7—by the way, the disjunctive liquid or solid language of the amended information, indeed of the statute, and a reading of the Good case on that subject, suggests that the defense may not get the discount sought . . . for the solid portion either, although that argument isn't really critical because I have so indicated, but I find beyond a reasonable doubt that the liquid in the drum exceeds 25 gallons."

section 11379.8. Defendant was arrested in a vehicle containing just over 11 pounds of a substance later proved to be 83 percent cocaine. A jury found him guilty of a violation of section 11352 (sale or transportation of a narcotic), as well as conspiracy, and found true the allegation that a substance containing cocaine weighed more than 10 pounds pursuant to section 11370.4, subdivision (a)(2), in accordance with which the trial court imposed a 5-year enhancement. Appellant asserted the word "substance," as used in section 11370.4, does not refer to a mixture of different compounds but is in effect a shorthand notation for "controlled substance" which denotes an illicit drug in its pure form. Said the court:

"Defendant, however, fails to examine the word 'substance' within its statutory context. Section 11370.4, subdivision (a), requires that a defendant be convicted with respect to 'a substance containing . . . cocaine.' The Court of Appeal observed that if it accepted defendant's interpretation, the words, 'substance containing' would either be rendered meaningless or produce an absurd result. We agree. Substituting defendant's definition, the requirement for imposing an enhancement under section 11370.4 would effectively read, 'with respect to pure cocaine containing cocaine.'

"The Court of Appeal found a more likely interpretation of 'substance containing . . . cocaine' to include ' "an identifiable chemical element, compound, or *mixture*—sometimes restricted to compounds and elements." ' (Quoting Webster's New Internat. Dict. (3d ed. 1981) p. 2279, italics added.) As the Court of Appeal noted, this definition comports with the express legislative objective: 'The Legislature enacted . . . section 11370.4 to discourage the transfer of large quantities of cocaine and other controlled substances. No authority suggests " 'the severity of these sanctions must be finely tuned to correspond to the amount of pure [narcotic] involved in any given transaction . . . .' " [Citation.] . . . The focus is on the *quantity*, not the *quality*, of the drug seized.' [Italics in original.]

"We conclude that the Court of Appeal correctly interpreted the language of section 11370.4 in holding that enhancements under that section are triggered by the weight of a mixture containing the drug and not merely by the weight of the pure drug itself." (52 Cal.3d at p. 903, fns. omitted.)

Appellant gives short shrift to *Pieters*. True, a different statute is involved therein, but the language of section 11370.4 interpreted in *Pieters* is virtually identical with section 11379.8. While, as pointed out by appellant, section 11370.4 does not contain the language of subdivision (b), the plain meaning of section 11379.8, as interpreted in *People* v. *Good* (1990) 217 Cal.App.3d 1533 [266 Cal.Rptr. 608], compels the conclusion that the Legislature

intended the words "controlled substance" as used therein to include an identifiable chemical element, compound, or mixture. (See *People* v. *Good, supra,* 217 Cal.App.3d at p. 1536, fn. 1; see also *People* v. *Pieters, supra,* 52 Cal.3d at p. 903.)

In *Good* a jury found defendant guilty of manufacturing, possessing for sale and conspiracy to manufacture methamphetamine, and that he manufactured a substance containing methamphetamine exceeding one pound of solid substance by weight for which the trial court enhanced the sentence by three years under section 11379.8. The jury added to 426 grams of a solid substance containing methamphetamine found in defendant's house, 264 grams of solid substance a criminalist obtained from a conversion of liquid found in the garage to solid weight. Appellant complained that the statute required the substance to exceed three gallons of liquid by volume or one pound of solid substances by weight, and the finding had to be of one of weight by liquid or solid, and it was improper to add one to the other even though the criminalist converted the liquid found in his garage to solid weight. In construing the statute (§ 11379.8) the court at the outset held, "The word 'substance' in this clause means a 'substance containing a controlled substance' [§ 11379.8, subd. (a)], such as methamphetamine [§ 11055, subd. (d)(2)]" (217 Cal.App.3d at p. 1536, fn. 1), and concluded that the trier of fact should be permitted to add the common measures of the seized substances in order to meet the statute's standards. (*Id.* at p. 1537.)

Third, we apply the commonsense practical rules of construction set up in *People* v. *Good, supra,* 217 Cal.App.3d 1533, to effectuate the purpose of the Legislature in enacting section 11379.8. "As noted above, the aim of the statute [section 11379.8] is focused on drug dealers and drug dealing in California. To require the statute to be applied in the manner urged by defendant would defeat the purpose of the law and sanction 'mischief and absurdity' at the expense of reason and common sense. (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 17-18 [194 Cal.Rptr. 722].)

■ "A statute should be interpreted (1) in accord with the ascertained legislative intent 'so as to effectuate the purpose of the law'; (2) in a reasonable, commonsense, practical and nontechnical manner consistent with the legislative intent in order to effectuate 'wise policy rather than mischief or absurdity'; (3) to give significance, if possible, to every word, phrase, sentence and part in light of the legislative intent, in order to 'harmonize' the parts with each other and with the whole, ' "in the context of the statutory framework" '; (4) to account for ' " 'matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous

construction' " '; and (5) to give ' "great weight" ' to past ' "consistent administrative construction." ' (*DeYoung* v. *City of San Diego, supra,* 147 Cal.App.3d at pp. 17-18; 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 94, pp. 146-147.)" (*People* v. *Good, supra,* 217 Cal.App.3d at p. 1538.)

Our construction of section 11379.8 is not only consonant with those principles, to the extent one or more have relevance here, but is supported by prevailing case law. Thus, we do not fault the trial court in its interpretation of the language of section 11379.8 and the 10-year enhancement imposed pursuant thereto.

II

### IMPOSITION OF CONCURRENT THREE-YEAR SENTENCE FOR PRIOR FOREIGN CONVICTION

The trial court imposed a state prison sentence for the midterm of five years on count I, plus a consecutive ten-year enhancement pursuant to section 11379.8, one consecutive three-year enhancement pursuant to section 11370.2 and a concurrent three-year enhancement pursuant to section 11370.2 for a prior felony conviction of conspiracy to possess and distribute narcotics, in the United States District Court for the Eastern District of New York,[6] for a total term of eighteen years; and on counts II through IV, stayed imposition of judgment and sentence pursuant to Penal Code section 654.

Appellant argues that the trial court exceeded its jurisdiction when it imposed a concurrent three-year enhancement under section 11370.2 for a prior felony conviction of conspiracy to possess and distribute narcotics, in the federal court in New York because this was not one of the enumerated priors upon which the court could legally impose the enhancement. His argument is persuasive.

Section 11370.2 provides in pertinent part: "(b) Any person convicted of a violation of, or of a conspiracy to violate, Section . . . 11379.6 . . . shall

---

[6]After imposing the 10-year enhancement under section 11379.8, the court stated:

"Now with regard to the enhancement of 11370.2, the court imposes a three-year consecutive enhancement pursuant to the third listed enhancement in the amendment to the information of October 26, 1990. That was for possession for sale of a controlled substance, Los Angeles Superior Court Case No. A 779 789.

"It seems to me that one reaches an appropriate sentence without getting into the Eastern District of New York. The court opines—well, let me do it this way. It doesn't hurt the defendant any and I think it makes a better record.

"The court does find that enhancement to be appropriate, but I can impose that concurrently, let me do it that way."

receive, in addition to any other punishment authorized by law . . . a full, separate, and consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate, Section 11351, 11351.5, 11352, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, or 11383, whether or not the prior conviction resulted in a term of imprisonment."

Plainly, section 11370.2, subdivision (b) provides that one convicted of manufacturing or conspiracy to manufacture a controlled substance under section 11379.6, shall receive a consecutive three-year term for a prior conviction under certain specified sections of the California Health and Safety Code. This section does not authorize a court to impose a three-year consecutive enhancement for a prior foreign controlled substance conviction, and we find no room for such a construction.　Neither is it the province of this court to rewrite the statute to imply an intent left unexpressed by the Legislature. " 'It is a prime rule of construction that the legislative intent underlying a statute must be ascertained from its language; if the language is clear, there can be no room for interpretation, and effect must be given to its plain meaning. [Citations.] "An intent that finds no expression in the words of the statute cannot be found to exist. The courts may not speculate that the legislature meant something other than what it said. Nor may they rewrite a statute to make it express an intention not expressed therein." ' [Citation.]" *Mutual Life Ins. Co.* v. *City of Los Angeles* (1990) 50 Cal.3d 402, 412 [267 Cal.Rptr. 589, 787 P.2d 996].)

Respondent argues that imposition of a concurrent three-year enhancement under section 11370.2 for the prior foreign felony conviction is supported by California Constitution, article I, section 28, subdivision (f),[7] which has been held to apply to any person who has been convicted of a prior felony, here or in any other jurisdiction (*People* v. *Blankenship* (1985) 167 Cal.App.3d 840 [213 Cal.Rptr. 666]), as long as the statutory elements of the out-of-state offense are the same as for a California felony offense (*People* v. *Crowson* (1983) 33 Cal.3d 623 [190 Cal.Rptr. 165, 660 P.2d 389]). What respondent has neglected to tell us is that the statutes—Penal Code sections 667, subdivision (a) and 667.5, subdivision (f)—construed in *People* v. *Blankenship, supra,* 167 Cal.App.3d 840, 853, and in *People* v. *Crowson, supra,* 33 Cal.3d 623, 632, specifically state that certain foreign felonies may form the basis of enhancements under those statutes. Section

---

[7]California Constitution, article I, section 28, subdivision (f) provides, "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."

11370.2 not only lacks comparable language, but specifies the kind of prior felony convictions that may be used, which are limited entirely to violations of specified sections of the Health and Safety Code of this state. Had the Legislature intended otherwise, it would have specified the offenses by description and not by numbered California statutes.

### DISPOSITION

The judgment is modified by striking therefrom the concurrent three-year enhancement for a prior felony conviction of conspiracy to possess and distribute narcotics in the United States District Court for the Eastern District of New York, imposed under section 11370.2. The judgment as modified is affirmed.

Johnson, J., concurred.

**WOODS (Fred), J.,** Dissenting.—In part II of its opinion, the majority holds that a prior felony conviction of conspiracy to possess and distribute narcotics is *not* a valid prior, within the meaning of Health and Safety Code section[1] 11370.2, *if suffered in federal court.* I disagree.

The majority's reasoning begins and ends with the language of section 11370.2. Because that language specifies only 11 California code sections as qualifying "prior felony conviction" sections, and the subject *federal* conviction is not, of course, a conviction of one of those sections, *therefore* the federal conviction is *not* a section 11370.2 prior.

I suggest a deeper analysis is called for.

Penal Code section 668 provides: "Every person who has been convicted in any other state, government, country, or jurisdiction of an offense for which, if committed within this state, such person could have been punished under the laws of this state by imprisonment in a state prison, is punishable for any subsequent crime committed within this state *in the manner prescribed by law and to the same extent as if such prior conviction had taken place in a court of this state.*" (Italics added.)

---

[1]Statutory references, unless otherwise noted, are to the Health and Safety Code.

The emphasized language makes clear that for enhancement purposes, a "foreign" prior felony (so long as it would also have been a California felony) is identical to a California prior felony.[2]

In 1985, when the Legislature enacted section 11370.2, California law provided that, for enhancement purposes, "foreign" felony priors and California felony priors were identical. (Pen. Code, § 668; see fn. 2, *ante*) The Legislature is presumed to know its own laws and "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness'." (*People* v. *Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420]; see also *People* v. *Davis* (1985) 166 Cal.App.3d 760 [212 Cal.Rptr. 673].)

"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. In order to determine this intent, we begin by examining the language of the statute. But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.'" (*People* v. *Pieters, supra*, 52 Cal.3d at pp. 898-899. Internal citations and quotations omitted.)

The Legislature's intent in passing section 11370.2 is clear. The section was part of a bill which amended section 11351 and added sections 11370.2, 11370.4, and 11379.8 (Stats. 1985, ch. 1398, p. 4948). Section 1 of the bill states: "It is the intent of the Legislature in enacting Sections 3 and 4 of this act to punish more severely those persons who are in the regular business of trafficking in, or production of, narcotics and those persons who deal in large quantities of narcotics as opposed to individuals who have a less serious, occasional, or relatively minor role in this activity."

This intent to "more severely" punish repeat narcotic traffickers is also reflected by the double punishment provision of section 11370.2 (". . . *in addition* to any other punishment authorized by law . . . ." See *People* v. *Powell* (1991) 230 Cal.App.3d 438, 441-442 [281 Cal.Rptr. 568]).

In my view it "would result in absurd consequences" (*People* v. *Pieters, supra*, 52 Cal.3d at p. 898) to exempt federal and other country (e.g.,

---

[2]Before amended in 1976, Penal Code section 668 applied only to Penal Code sections 644, 666, and 667. As part of the Uniform Determinate Sentencing Act of 1976, the section was amended to delete "in Sections 644, 666, and 667" and substitute "by law." (Deering's Ann. Pen. Codes (1983 ed.) § 668, p. 245.)

Columbia) narcotic trafficking convictions from section 11370.2 enhanced punishment. It is those very felony convictions which "persons who deal in large quantities of narcotics" are likely to have sustained.

Moreover, as our Supreme Court has stated: "In the absence of limitation, a reference to 'prior felony convictions' is deemed to include any prior conviction which was a felony under the laws of the convicting jurisdiction." (*People* v. *Lang* (1989) 49 Cal.3d 991, 1038-1039 [264 Cal.Rptr. 386, 782 P.2d 627].) Section 11370.2's use of "prior felony conviction" is absent any limitation.

In my view, the subject prior felony conviction is valid within the meaning of section 11370.2. The trial court, therefore, was required to impose a *consecutive* three-year term or, if it determined that there were circumstances in mitigation (Pen. Code, § 1170.1, subd. (b)), strike the allegation. I would vacate the concurrent three-year sentence and remand the matter to the trial court for this limited resentencing.

Respondent's petition for review by the Supreme Court was denied September 16, 1993. Baxter, J., and George, J., were of the opinion that the petition should be granted.