Filed 3/13/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>     Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF<br>SAN DIEGO COUNTY,<br><br>     Respondent;<br><br>MANUEL FLORES,<br><br>     Real Party in Interest. | D064350<br><br>(San Diego County<br>Super. Ct. No. CR110487)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on February 21, 2014, be modified as follows:

1. On page 9 of the opinion, the second full paragraph should be deleted and replaced with the following:

> Here, Flores cannot show that he is similarly situated to offenders
> sentenced to LWOP because his sentence is not the functional equivalent of
> LWOP. As previously noted, after the enactment of section 3051 (SB 260),
> Flores has " 'some meaningful opportunity to obtain release based on
> maturity and rehabilitation.' " (*People v. Martin* (2013) 222 Cal.App.4th
> 98, 105 [finding that a sentence of 45 years plus two consecutive life terms
> was not the functional equivalent of LWOP because newly enacted section
> 3051 provided him a meaningful opportunity for parole].) Thus, Flores is

not similarly situated to offenders with LWOP sentences and his equal protection argument fails.

There is no change in judgment.

McINTYRE, Acting P. J.

Copies to: All parties

Filed 2/21/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF<br>SAN DIEGO COUNTY,<br><br>    Respondent;<br><br>MANUEL FLORES,<br><br>    Real Party in Interest. | D064350<br><br>(San Diego County<br>Super. Ct. No. CR110487) |

Petition for writ of mandate/prohibition from an order of the Superior Court of San Diego County.  Charles G. Rogers, Judge.  Petition granted.

Bonnie M. Dumanis, District Attorney, Laura E. Tanney, James E. Atkins and Linh Lam, Deputy District Attorneys for Petitioner.

No appearances for Respondent.

Laura R. Sheppard for Real Party in Interest.

In this case, we consider whether Penal Code section 1170, subdivision (d)(2) (section 1170(d)(2)), regarding a juvenile offender's ability to petition for recall of his or her sentence, applies to a juvenile offender serving a long-term sentence that is not technically life without parole (LWOP). We conclude that it does not. We further reject real party in interest's contention that, so interpreted, section 1170(d)(2) violates his right to equal protection. (Undesignated statutory references are to the Penal Code.)

BACKGROUND

To provide background, we summarize the facts that led to Manuel Flores's convictions from our prior opinion (*People v. Flores* (Mar. 24, 1993, D014326) [nonpub. opn.]).

In 1989, Flores and Christopher Box killed April Gilhousen, her three-year-old son, Bryan, and Kevin Chandler during a robbery. They also attempted to kill Rodney Almond who arrived at Gilhousen's home when the other crimes were taking place. Flores admitted that he cut Chandler's throat with a box cutter and stabbed Gilhousen with a knife.

Flores was approximately 17 and one-half years old when he committed the crimes. He was convicted of three counts of first degree murder, premeditated attempted murder, robbery, burglary and conspiracy to commit robbery. Flores was sentenced to three consecutive terms of 25 years to life in prison for the first degree murder convictions plus one year for a knife allegation. He was also sentenced to a term of life in prison for the attempted murder. The court stayed all other determinate term sentences

pursuant to section 654. Box, an adult when the crimes were committed, was sentenced to death.

After serving approximately 22 years in prison, Flores petitioned the trial court to recall his sentence under section 1170(d)(2). The People opposed Flores's petition, contending section 1170(d)(2) was inapplicable because he was not sentenced to LWOP. Flores argued the statute was applicable to him because his sentence of 76 years to life was the functional equivalent of LWOP.

The trial court granted Flores's petition and thereby recalled his sentence. The court also set the matter for a resentencing hearing.

The People filed a petition for writ of mandate/prohibition in this court, arguing that the trial court acted in excess of its jurisdiction because section 1170(d)(2) does not apply to Flores. We stayed the trial court's resentencing hearing and subsequently issued an order to show cause why the relief the People requested should not be granted.

DISCUSSION

I. *Section 1170(d)(2)*

A. Issue Presented and Standard of Review

The People's petition presents the legal question of whether section 1170(d)(2) applies to long-term sentences that are not technically LWOP. The question presented involves statutory interpretation, which presents a question of law subject to de novo review. (*Bialo v. Western Mutual Ins. Co*. (2002) 95 Cal.App.4th 68, 76-77.) Our goal is to ascertain and carry out the Legislature's intent (Code Civ. Proc., § 1859), looking first to the words of the statute, giving them their usual and ordinary meaning. (*People v.*

*Garcia* (2002) 28 Cal.4th 1166, 1172.) If the language of the statute is susceptible to more than one reasonable construction, we can look to the legislative history to aid in ascertaining the legislative intent. (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055.) "We are guided by the fundamental rule 'that the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its interpretation.' " (*People v. United Nat'l Life Ins. Co*. (1967) 66 Cal.2d 577, 596, quoting *Rock Creek Water Dist. v. County of Calaveras* (1946) 29 Cal.2d 7, 9.)

B. Analysis

In September 2012, California enacted Senate Bill No. 9 (SB 9), which amended section 1170 by adding subdivision (d)(2). (Stats. 2012, ch. 828, § 1.) That subdivision provides: "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was *sentenced to imprisonment for life without the possibility of parole* has served at least 15 years of that sentence, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170, subd. (d)(2)(A)(i), italics added.)

One year later, California enacted Senate Bill No. 260 (SB 260), which added section 3051, providing that "any prisoner who was under 18 years of age at the time of his or her controlling offense" shall be afforded a "youth offender parole hearing." (Stats. 2013, ch. 312 (S.B. 260); § 3051, subds. (a)(1), (d).) Under the new law, a juvenile offender with a determinate sentence of any length shall be eligible for release on parole at a hearing during his or her 15th year of incarceration; a juvenile sentenced to an

indeterminate term of less than 25 years to life would be eligible for release on parole at a hearing during his or her 20th year of incarceration; and a juvenile sentenced to an indeterminate term of 25 years to life would be eligible for release on parole at a hearing during his or her 25th year of incarceration. (§ 3051, subd. (b).) Section 3051 does not apply to individuals sentenced to life in prison *without* the possibility of parole. (§ 3051, subd. (h).)

SB 260 was a direct response to *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*). (Stats. 2013, ch. 312 (S.B. 260), § 1.) In that case, our high court concluded "that sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment." (*Caballero*, at p. 268.) The court "urge[d] the Legislature to enact legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without the possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity." (*Id.* at fn. 5.)

In enacting SB 260, "[t]he Legislature recognize[d] that youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society." (Stats. 2013, ch. 312 (S.B. 260), § 1.) The Legislature expressly stated that the purpose of the law "is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the

opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in *People v. Caballero*[, *supra*,] 55 Cal.4th 262 and the decisions of the United States Supreme Court in *Graham v. Florida* (2010) 560 U.S. 48, and *Miller v. Alabama* (2012) 183 L.Ed.2d 407." (Stats. 2013, ch. 312 (S.B. 260), § 1.) Thus, "[t]he youth offender parole hearing to consider release shall provide a meaningful opportunity to obtain release" and any psychological assessments utilized by the board in making its parole determination must "take into consideration the diminished culpability of juveniles as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the individual." (§ 3051, subds. (e), (f)(1).)

Despite the enactment of SB 260, Flores argues that the Legislature responded to *Caballero*, *supra*, 55 Cal.4th 262 through SB 9 and intended to treat de facto LWOP sentences the same as technical LWOP sentences. The language and legislative history of section 1170(d)(2) do not support Flores's contention.

The plain language of section 1170(d)(2) provides that it applies to juvenile offenders "sentenced to imprisonment for *life without the possibility of parole*." (§ 1170, subd. (d)(2)(A)(i), italics added.) There is nothing in the language that indicates the Legislature intended for the statute to also apply to sentences that may be the functional equivalent of life without the possibility of parole. Had the Legislature intended that effect, we presume it would have expressly stated so. It is not "the province of this court to rewrite the statute to imply an intent left unexpressed by the Legislature. . . . The courts may not speculate that the legislature meant something other than what it said.

Nor may they rewrite a statute to make it express an intention not expressed therein." (*People v. Burgio* (1993) 16 Cal.App.4th 769, 778.)

Even if we conclude that the language of the statute is susceptible to more than one reasonable construction, its legislative history does not support Flores's argument that the legislature responded to our high court's decision in *Caballero* with SB 9. SB 9 was introduced in December 2010, which was nearly two years before the *Caballero* decision. The bill went through multiple revisions with the last amendment on July 2, 2012, which was more than a month before *Caballero*. The Senate passed SB 9 four days after the decision in *Caballero*; however, there is no indication that they or the governor responded to the *Caballero* decision.

Further, the history of SB 9 shows the Legislature knew that in certain instances, courts found long-term sentences for juvenile offenders constituted de facto LWOP sentences. For example, in the analysis by the Assembly Committee on Public Safety, the author referenced a case in which the court found a juvenile's sentence was cruel and unusual punishment because it was a "de facto LWOP" sentence in that it did not provide a meaningful opportunity for release during the offender's lifetime. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 9 (2011-2012 Reg. Sess.) as amended May 27, 2011, p. 10.) Despite its recognition of "de facto LWOP" sentences, the Legislature did not include such language in SB 9.

The legislative history of recently enacted SB 260 further supports the conclusion that the Legislature did not intend for section 1170(d)(2) (the subject of SB 9) to apply to long term sentences that are not technically LWOP. As stated in the analysis by the

Assembly Committee on Appropriations, "[c]urrent law [(section 1170(d)(2))] allows an inmate who was under 18 at the time of an offense that resulted in a term of life-*without*-the-possibility-of parole (LWOP) (first-degree murder) to petition the court for resentencing after 15 years. [SB 260] addresses the situation, the subject of *People v[.] Caballero*, in which a youth is sentenced to life-*with*-the-possibility of parole, which may serve as a *de facto* life sentence." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 260 (2012-2013 Reg. Sess.) as amended Aug. 12, 2013, p. 2.) Accordingly, SB 260 filled the gap left after SB 9 and addressed *Caballero*.

Based on the foregoing, we conclude section 1170(d)(2) does not apply to offenders sentenced to long-term indeterminate sentences that are not technically LWOP. Rather, section 3051 applies to those offenders, including Flores. Thus, the trial court erred in granting Flores's petition under section 1170(d)(2).

## II. *Equal Protection*

Flores argues that interpreting section 1170(d)(2) to apply only to offenders with technical LWOP sentences violates his right to equal protection because with a de facto LWOP sentence, he is similarly situated. We reject this argument.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." A similar requirement appears in the California Constitution, article I, section 7.

" ' " 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' " ' " (*People v. Jeha* (2010) 187 Cal.App.4th 1063, 1073, quoting *People v. McKee* (2010) 47 Cal.4th 1172, 1218-1219.)

Here, Flores cannot show that he is similarly situated to offenders sentenced to LWOP because his sentence is not the functional equivalent of LWOP. As previously noted, after the enactment of section 3051 (SB 260), Flores has " 'some meaningful opportunity to obtain release based on maturity and rehabilitation.' " (*People v. Martin* (2013) 222 Cal.App.4th 98, 105 [finding that a sentence of 45 years plus two consecutive life terms was not the functional equivalent of LWOP because newly enacted section 3051 provided him a meaningful opportunity for parole]; *In re Alatriste* (2013) 220 Cal.App.4th 1232, 1240 [finding that sentences of 77 years to life and 55 years to life did not constitute cruel and unusual punishment because the sentences were not the functional equivalent of LWOP where the Legislature subsequently enacted section 3051, providing defendants a meaningful opportunity to obtain release on parole].) Thus, Flores is not similarly situated to offenders with LWOP sentences and his equal protection argument fails.

DISPOSITION

Let a writ issue directing the superior court to vacate its order recalling Flores's sentence under section 1170(d)(2) and setting a resentencing hearing.  The trial court is directed to enter a new order dismissing Flores's petition for recall and resentencing.  The stay issued by this court on August 8, 2013 is vacated.


McINTYRE, J.

WE CONCUR:

HUFFMAN, J.

BENKE, Acting P. J.