[No. F017646. Fifth Dist. Nov. 2, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
GERARDO CERVANTES TINAJERO, Defendant and Appellant.

## COUNSEL

Michael J. Fitzpatrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Garnand Venturi and Janis Shank McLean, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HARRIS, J.—**

### STATEMENT OF THE CASE

On January 6, 1992, an information was filed in Tulare County Superior Court charging appellant Gerardo Cervantes Tinajero with felony sale or transportation of cocaine (Health & Saf. Code, § 11352) with an enhancement for a prior drug conviction within the meaning of Health and Safety Code section 11370.2, subdivision (a), and service of a prior prison term within the meaning of Penal Code section 667.5, subdivision (b).

On January 8, 1992, appellant was arraigned and pleaded not guilty. Appellant's jury trial began on February 25, 1992. On February 27, appellant was found guilty. He waived his right to a jury trial as to the enhancements. The court found the Health and Safety Code section 11370.2, subdivision (a) enhancement to be true, and the Penal Code section 667.5, subdivision (b) enhancement not to be true. On March 26, 1992, the court denied probation and appellant was sentenced to the midterm of four years, with a consecutive term of three years for the enhancement.

On April 9, 1992, a timely notice of appeal was filed. On August 24, 1992, appellate counsel filed an opening brief pursuant to *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]. On January 25, 1993, and May 4, 1993, this court requested additional briefing from the parties.

### STATEMENT OF FACTS

On November 26, 1991, Officer Thomas Salazar of the Tulare Police Department was working undercover with the interagency narcotics enforcement team. He came into contact with appellant Tinajero and discussed purchasing several kilos of cocaine from him. Appellant stated that his connection would not produce that much, but offered one kilo for "trust" and others would follow if the purchase went smoothly. Appellant stated that he possibly could get a kilo for about $14,000. Appellant promised to contact Salazar after speaking with his connection.

Salazar called appellant around noon on November 27. Appellant stated that he had not contacted his connection because his connection would not be home until 5 p.m. Appellant promised to contact Salazar as soon as he spoke with his connection. Appellant called Salazar at 5:51 p.m., and

reported that everything was ready. Salazar agreed to meet him at 6:30 p.m. at a rest stop on Highway 99 just north of Traver.

At 6:30 p.m., Salazar arrived at the rest stop accompanied by an unmarked undercover backup unit. Appellant arrived at the rest stop 45 minutes later, and Salazar was waiting for him on a park bench. Appellant opened the hood of his car and fiddled inside the engine compartment for several minutes, then closed the hood and walked toward Salazar. They discussed whether appellant needed oil for his vehicle and walked toward appellant's car. Just before they reached his car, appellant said, " 'The stuff's inside.' " Appellant entered the driver's side, and Salazar sat on the front passenger seat. Appellant said, " 'It's on the floor,' " and Salazar noticed a plastic package on the floorboard. Salazar picked it up and opened it. Inside was a hard package wrapped in beige plastic. Salazar took possession of the package. Salazar told appellant that the money was in the trunk of his car, and they left appellant's vehicle and walked toward Salazar's car. As Salazar unlocked the trunk, he gave the signal for his backup unit to move in and arrest appellant, but they did not immediately respond. Salazar attempted to stall for a little time and told appellant that he could not find the money. Appellant offered to help him, and reached into the trunk to look for the money. Appellant found the brown paper bag containing $15,000 cash, pulled it out of the trunk, and handed it to Salazar. Salazar opened the bag and showed appellant the money, then placed the plastic package into the trunk of his car. As Salazar and appellant walked back toward appellant's car, the backup unit finally arrived and appellant was taken into custody.

It was later determined that the plastic package consisted of approximately one kilo of pure cocaine hydrochloride.

Salazar testified his conversations with appellant were conducted in Spanish. Salazar explained that he spoke a little Spanish but was not fluent. On cross-examination Salazar was impeached with his testimony from the preliminary hearing in which he stated that he did not discuss the price of $15,000 with appellant prior to the sale. Salazar was asked the reason for bringing $15,000 when they agreed to the purchase price of $14,000. Salazar explained that his sergeant gave him that particular sum of money to use in the undercover operation. The defense rested without calling any witnesses.

Appellant was charged with one count of violating Health and Safety Code section 11352, sale or transportation of cocaine. During closing argument, the prosecutor argued that the incident at the rest stop established both the sale and the transportation of cocaine. Appellant transported cocaine based on Salazar's testimony that appellant arrived at the rest stop with a

kilo of cocaine in his car. The prosecutor also argued that the evidence established the sale of cocaine: "Detective Salazar took possession of the cocaine in the defendant's car. He later showed the defendant a flash of the $15,000 that he had in the trunk of his undercover car." Defense counsel attacked the veracity of Salazar's testimony, pointing to the conflict regarding the prearranged price in the preliminary hearing transcript and whether Salazar could speak Spanish and conduct a conversation with appellant. Counsel also argued that appellant never took possession of the bag of money and that Salazar never intended to give it to him. Salazar merely showed appellant the money and retained the bag. "So at some point Officer Salazar has the money and the drugs. My client has nothing. He's certainly never has the money." In rebuttal, the prosecutor inferred that Salazar never intended to let appellant leave with the money.

The jury was instructed that appellant was accused of violating Health and Safety Code section 11352: "Every person who transports, sells, furnishes, [administers] or gives away a controlled substance, namely cocaine, is guilty of the crime. [¶] In order to prove such crime, each of the following elements must be proved: A person sold or transported cocaine, a controlled substance, and two, such person had knowledge of [its] presence and nature as a controlled substance." The jury also received the unanimity instruction: "The defendant is accused of having committed the crime of sale or transportation of cocaine. The prosecution has introduced evidence tending to prove there is more than one act upon which a conviction may be based. The defendant may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts. However, in order to return a verdict of guilty, all jurors must agree that he committed the same act or acts. It is not necessary that the particular act agreed upon be stated in your verdict." The defense did not request, and the trial court did not give, instructions on any lesser included offenses.

Appellant was found guilty of violating Health and Safety Code section 11352, sale or transportation of cocaine.

The issues on appeal are whether the court had a sua sponte duty to instruct on possession for sale and simple possession as lesser included offenses of sale of cocaine, and assuming instructional error, is it reversible pursuant to *People* v. *Guiton* (1993) 4 Cal.4th 1116 [17 Cal.Rptr.2d 365, 847 P.2d 45] given the alternative nature of the charged offense.

## DISCUSSION

 The initial question posed by this case is whether the trial court had a sua sponte duty to instruct on lesser included offenses to the alternative

charged offense of sale of cocaine. Where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense. (*People* v. *Lohbauer* (1981) 29 Cal.3d 364, 369 [173 Cal.Rptr. 453, 627 P.2d 183].) The court must instruct on a lesser included offense, even if not requested to do so, when the evidence raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense, but not when there is no evidence that the offense was less than that charged. (*People* v. *Turner* (1990) 50 Cal.3d 668, 690 [268 Cal.Rptr. 706, 789 P.2d 887]; *People* v. *Barrick* (1982) 33 Cal.3d 115, 133 [187 Cal.Rptr. 716, 654 P.2d 1243]; *People* v. *Kaurish* (1990) 52 Cal.3d 648, 696 [276 Cal.Rptr. 788, 802 P.2d 278].)

"The necessity for instructions on lesser included offenses is based in the defendant's constitutional right to have the jury determine every material issue presented by the evidence. [Citations.] As the United States Supreme Court explained in *Keeble* v. *United States* (1973) 412 U.S. 205, 212 . . . : '[I]t is no answer to petitioner's demand for a jury instruction on a lesser included offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction.' [Citation.]" (*People* v. *Ramkeesoon* (1985) 39 Cal.3d 346, 351 [216 Cal.Rptr. 455, 702 P.2d 613].)

Both possession for sale, and simple possession, are lesser included offenses of the sale of cocaine under the facts of this case. (See *People* v. *Mitchell* (1975) 53 Cal.App.3d 21, 23-25 [125 Cal.Rptr. 543]; *People* v. *Saldana* (1984) 157 Cal.App.3d 443 [204 Cal.Rptr. 465].) The record reflects without contradiction that appellant arrived at the rest stop with a kilo of cocaine in his automobile. The evidence in support of the sales allegation, while not insufficient, was subject to interpretation because the jury could have concluded that appellant never took possession of the money such that the sale was never completed. The jury could have discounted the actual completion of a sale and instead found that appellant either possessed the cocaine for purposes of sale or, given the contradictory evidence of any prior discussion of price, that appellant simply possessed the narcotics. Thus, the trial court's failure to give, sua sponte, instructions on the lesser included offenses constitutes error.

 The failure to instruct on necessarily included offenses cannot be cured by weighing the evidence and finding it not reasonably probable that a correctly instructed jury would have convicted the defendant of the lesser included offense. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Wickersham* (1982) 32 Cal.3d 307, 335 [185 Cal.Rptr. 436, 650 P.2d 311].) However, ". . . in some circumstances it is possible to determine that although an instruction on a lesser included offense was erroneously omitted, the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant since the evidence that would support a finding that only the lesser offense was committed has been rejected by the jury." (*People* v. *Sedeno*, *supra*, 10 Cal.3d at p. 721.)

 The error in this case cannot simply be resolved through the *Sedeno* analysis given the alternative nature of the charged offense. Appellant was charged and convicted of count one, sale *or* transportation of cocaine. Having determined the trial court erroneously failed to instruct on lesser included offenses for sale of cocaine, the question is whether the conviction may be affirmed given the overwhelming evidence of transportation.

The issue of alternate allegations was addressed in *People* v. *Guiton*, *supra*, 4 Cal.4th 1116. Defendant was convicted of count I, sale or transportation of cocaine, and count II, possession of cocaine for sale. The Court of Appeal affirmed count II but reversed count I because of insufficient evidence that defendant sold cocaine. It refused to rely on the alternate transportation allegation because it could not determine from the record upon which basis the jury verdict rested, and reversed the conviction pursuant to *People* v. *Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468]. The Supreme Court, however, distinguished *Green* and affirmed count I based on the overwhelming evidence of the alternate transportation allegation, pursuant to *Griffin* v. *United States* (1991) 502 U.S. __ [116 L.Ed.2d 371, 112 S.Ct. 466]. (*People* v. *Guiton*, *supra*, 4 Cal.4th at p. 1121.)

*Guiton* attempted to harmonize the rules regarding alternate grounds of conviction discussed in *Green* and *Griffin*. In *Green*, the court found one factual scenario supporting the asportation element for a kidnapping conviction and special circumstance, but also detected legal errors with respect to two potential other scenarios. The court held that ". . . when the prosecution presents its case to the jury on alternate theories, some of which are legally

correct and others legally incorrect, and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand." (*People* v. *Green, supra,* 27 Cal.3d at p. 69.) "The rule is perhaps most commonly invoked when the alternate theory is legally erroneous" because it is supported by inadmissible evidence or incorrect instructions. (*Ibid.*) *Green* went on to state that "[t]he same rule applies when the defect in the alternate theory is not legal but factual, i.e., when the reviewing court holds the evidence insufficient to support the conviction on that ground." (*Id.* at p. 70.) While the record contained evidence that could have led the jury to predicate its kidnapping verdict on the legally sufficient elements of asportation, it also contained evidence that could have led the jury to rely "on either of the legally insufficient portions of that movement. . . . We simply cannot tell from this record which theory the jury in fact adopted." (*Id.* at p. 71.)

*Griffin* involved a multicount indictment against defendant and two codefendants for conspiracy. Defendant was charged with one count of conspiracy with two alleged objects, but the evidence did not connect defendant to the second of the alleged objects. There was sufficient evidence to connect defendant to the first object and the codefendants to both. The issue was whether a general guilty verdict on a multiple-object conspiracy charge must be set aside if the evidence is inadequate to support conviction as to one of the objects. (*Griffin* v. *United States, supra,* 502 U.S. at p. __ [116 L.Ed.2d at p. 375, 112 S.Ct. at p. 468.)

*Griffin* relied on another alternate allegation case, *Turner* v. *United States* (1970) 396 U.S. 398 [24 L.Ed.2d 610, 90 S.Ct. 642], in which the defendant challenged the sufficiency of the evidence to support a charge of knowingly purchasing, possessing, dispensing and distributing heroin: "*Griffin* discussed *Turner* as follows: 'We held that the conviction would have to be sustained if there was sufficient evidence of distribution *alone.* We set forth as the prevailing rule: "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." [Citations.]' . . . . [*Griffin*] then stated that 'a logical and consistent application of *Turner* demands that proof of alternative facts in conspiracy cases be treated the same as proof of alternative facts in other contexts.'" (*People* v. *Guiton, supra,* 4 Cal.4th 1116, 1124, quoting *Griffin* v. *United States, supra,* 502 U.S. at p. __ [116 L.Ed.2d at pp. 381-382, 112 S.Ct. at p. 473].) *Guiton* characterized *Griffin* as distinguishing between "a mistake about the law, which is subject to the rule generally requiring reversal, and a mistake concerning the weight or the factual import of the evidence, which does not require reversal when another valid basis for conviction exists." (*People* v. *Guiton, supra,* 4 Cal.4th at p. 1125.)

"'Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence [citation].'" (*People* v. *Guiton, supra,* 4 Cal.4th at p. 1125, quoting *Griffin* v. *United States, supra,* 502 U.S. at p. __ [116 L.Ed.2d at p. 382, 112 S.Ct. at p. 474].) *Guiton* thus distinguished *Green* and concluded that it survived *Griffin*: "[*Griffin*] carefully distinguished between two types of cases involving insufficient evidence: (a) those in which 'a particular theory of conviction . . . is contrary to law,' or, phrased slightly differently, cases involving a '*legally* inadequate theory'; and (b) those in which the jury has merely been 'left the option of relying upon a *factually* inadequate theory,' or, also phrased slightly differently, cases in which there was an 'insufficiency of proof.' (*Griffin, supra,* . . . [112 S.Ct. at p. 474], italics added.) The former type of case is subject to the rule generally requiring reversal; the latter generally does not require reversal if at least one valid theory remains. [Citation.] Among the examples [*Griffin*] gave for the former category, the one subject to the rule generally requiring reversal, is a case where the inadequate theory 'fails to come within the statutory definition of the crime.' [Citation.]" (*People* v. *Guiton, supra,* 4 Cal.4th at p. 1128.) ▐ *Guiton* construed *Green* "as applying only to cases of *legal* insufficiency in the *Griffin* sense," and summarized the rule as follows: "If the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground. But if the inadequacy is legal, not merely factual, that is, when the facts do not state a crime under the applicable statute, as in *Green*, the *Green* rule requiring reversal applies, absent a basis in the record to find that the verdict was actually based on a valid ground." (*People* v. *Guiton, supra,* 4 Cal.4th at p. 1129, fn. omitted.)

In *Guiton*, defendant was charged with sales or transportation of cocaine but there was insufficient evidence of sales. *Guiton* relied on *Griffin* and affirmed the conviction based on the substantial evidence of transportation. Reversal was not required by *Green* because the insufficiency of the sales evidence was purely a factual question rather than a legal error. In addition, the prosecution argued that the evidence supported both theories and particularly concentrated on the transportation theory. (*People* v. *Guiton, supra,* 4 Cal.4th at p. 1130.)

*Guiton* declined to state the exact standard of review of cases governed by *Green*: ". . . [T]he general rule has been to reverse the conviction because the appellate court is ' "unable to determine which of the prosecution's theories served as the basis for the jury's verdict." ' [Citation.] But even this rule has not been universal. One way of finding this kind of error harmless has long been recognized. Sometimes it is possible to determine from other portions of the verdict that the jury necessarily found the defendant guilty on a proper theory. [Citations.]" (*People* v. *Guiton, supra,* 4 Cal.4th at p. 1130, citing to *People* v. *Sedeno, supra,* 10 Cal.3d 703, 721.)

◼ In the instant case, the jury could have based its verdict on finding evidence of either the sales or transportation allegations. If the evidence was insufficient as to sales, *Guiton* permits this court to affirm the conviction given the overwhelming evidence of the alternate transportation allegation. The evidence as to the sales theory, however, is not insufficient but would have supported the lesser included offenses of either simple possession or possession for sale given the conflicting inferences of whether a sale actually occurred. The question, then, is whether *Guiton* permits reliance on the transportation allegation given the failure to instruct on lesser included offenses as to the sales allegation.

The error present in this case, if any, is the failure to give the instructions on the lesser included offenses for sale and thus provide the jury with the option to consider those offenses on the state of the record. As previously noted, such a failure may, under some circumstances, require reversal because the jury is left with an all or nothing choice and, notwithstanding any doubt, may select conviction rather than acquittal. (*People* v. *Ramkeesoon, supra,* 39 Cal.3d 346, 351.)

The failure to instruct on the "lessers" may be classified as a "legal" as opposed to "factual" error. *Guiton, Griffith* and *Green,* in discussing the effect of an alternate theory of guilt and the issue of prejudice, distinguished between legal and factual error and concluded that while a jury is deemed competent to ferret out factual deficiencies, the same cannot be said regarding legal errors of which jurors may be unaware, such as those involving the statute of limitations or the failure to legally define the crime. In the instant case, however, no issue was presented to the jury for determination that contained a hidden legal deficiency, there being no legal deficiency in either the sale or transportation theory. The "legal" deficiency, i.e., failure to instruct on the lessers, was a matter outside of any issue submitted to the jury for its consideration. The only questionable issue presented to the jury was the factual sufficiency of the sale evidence. The concern, in the absence of the alternate transportation theory, would be the fear that the jury convicted appellant of sale despite the nature of the evidence, given that the

only other option would be acquittal. However, we need not be concerned with the all-or-nothing possibility because *Guiton* permits us to presume the jury, if they found the evidence of sale questionable or insufficient, instead turned to the alternate transportation charge which is overwhelmingly supported by the record.

## CONCLUSION

The judgment is affirmed.

Best, P. J., and Bianchi, J.,* concurred.

---

*Retired judge of the Kern Superior Court sitting under assignment by the Chairperson of the Judicial Council.