[No. D017343. Fourth Dist., Div. One. Nov. 30, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE ARRANDA LOPEZ, Defendant and Appellant.

## COUNSEL

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Laura Whitcomb Halgren, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KREMER, P. J.—Jose Arranda Lopez appeals his conviction of conspiracy to sell methamphetamine (Pen. Code, § 182, subd. (a)(1); Health & Saf. Code, § 11379) and an enhancement based on a conspiracy to sell more than three pounds of methamphetamine (Health & Saf. Code, § 11370.4, former subd. (b)(1)). On appeal, Lopez contends the enhancement should be stricken because there was no evidence of any finished methamphetamine and because the jury did not return a special verdict form finding he was "substantially involved" in the conspiracy to sell methamphetamine. Lopez also contends his conspiracy conviction must be reversed because the jury failed to make an express finding that he committed one or more of the overt acts alleged. We find merit to Lopez's argument about the applicability of the enhancement to this case and order it stricken. Otherwise we affirm.

### FACTS

A couple of days before February 27, 1992, a confidential informant met with Rodrigo Sewell and arranged to sell Sewell 30 pounds of ephedrine, a chemical used to manufacture methamphetamine. The informant told the

narcotics task force, which arranged to have an undercover officer sell ephedrine to Sewell.

On February 27, 1992, the undercover officer went to a restaurant parking lot with a 100-pound container of ephedrine. The informant introduced the officer to Sewell and to Lopez and another man sitting in a Camaro. The officer agreed to sell them 30 pounds of ephedrine for $20,000. The officer then asked Sewell about the possibility of obtaining the "finished product," i.e., methamphetamine, stating he could sell three pounds a week. Sewell conferred with Lopez in Spanish and then told the officer they could. The officer asked the price per pound. Sewell, after conferring with Lopez, stated the price would be $7,000 a pound. The officer asked Sewell how many times a week he could come up with that "amount of methamphetamine." Sewell conferred with Lopez and then replied "three a week" and that Lopez could do more.

When the undercover officer asked to see the money, Lopez got out of the car with the keys, opened the trunk and showed the officer a Frosted Flakes cereal box filled with envelopes containing cash. After seeing the money, Lopez and Sewell started moving the barrel of ephedrine from the officer's truck to Sewell's truck. Shortly thereafter they were arrested.

The officer believed Lopez was in the leadership role based on: (1) Sewell's conferring with Lopez about providing methamphetamine, the amount and the price; (2) Lopez's showing of the money indicated Lopez, rather than Sewell, had control over the money; and (3) Lopez's quote of $7,000 per pound which was a reasonable quote and indicated Lopez knew what he was doing.[1]

Lopez was charged with not only conspiring to sell methamphetamine but also conspiring to manufacture methamphetamine (Pen. Code, § 182, subd. (a)(1); Health & Saf. Code, § 11379.6). A jury convicted him only of conspiring to sell methamphetamine. The jury also found true the weight enhancement.

## DISCUSSION

### I

### *Weight Enhancement*

Lopez contends the weight enhancement under Health and Safety Code section 11370.4 is not applicable when there is only the precursor chemical and no finished methamphetamine.

---

[1]The officer testified the price of a pound in San Diego County ranged from $6,000 to $11,000 and $7,000 was "a good price, but not an unreasonable price based on the fact [he] was . . . getting the methamphetamine or the pounds of methamphetamine directly from the people who were manufacturing it."

Health and Safety Code section 11370.4, former subdivision (b)(1) provided:

"(b) Any person convicted of a violation of, or of conspiracy to violate, Section 11378 [possession for sale], 11378.5 [possession for sale], 11379 [transportation], or 11379.5 [transportation] with respect to a substance containing methamphetamine, amphetamine, phencyclidine (PCP) and its analogs shall receive an additional term as follows:

"(1) *Where the substance exceeds three pounds by weight*, or nine gallons by liquid volume, the person shall receive an additional term of three years." (Italics added.)[2]

Health and Safety Code section 11370.4, subdivision (b) also provides enhancements of 5, 10 or 15 years for greater weights of the enumerated drugs. (Health & Saf. Code, § 11370.4, subd. (b)(2), (3) & (4).)[3] The statute also requires the trier of fact to find if the defendant convicted of conspiracy "was substantially involved in the planning, direction, execution, or financing of the underlying offense" before the enhancement may be imposed. (Health & Saf. Code, § 11370.4, subd. (b).)

In construing a statute, the task of the court is to determine and give effect to the Legislature's intent. (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1095 [282 Cal.Rptr. 841, 811 P.2d 1025]; *People* v. *Freeman* (1988) 46 Cal.3d 419, 425 [250 Cal.Rptr. 598, 758 P.2d 1128].) The court begins with the language used. (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 91 [255 Cal.Rptr. 670, 767 P.2d 1148].) The court attempts to give effect to the usual, ordinary import of the language and to avoid making any language mere surplusage. (*Regents of University of California* v. *Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 607 [224 Cal.Rptr. 631, 715 P.2d 590]; *Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 218 [246 Cal.Rptr. 733, 753 P.2d 689].) "The words must be construed in context in light of the nature and obvious purpose of the statute where they appear. [Citation.]" (*Decker* v. *City of Imperial Beach*

---

[2]Health and Safety Code section 11370.4 was amended in 1992 to change the measurements to the metric system. Currently, section 11370.4, subdivision (b)(1) provides a three-year enhancement if the substance weighs more than one kilogram or exceeds thirty liters by liquid volume.

[3]Prior to the amendment of Health and Safety Code section 11370.4, a 5-year enhancement was imposed if the substance exceeded 10 pounds (now 4 kilograms) and a 10-year enhancement if the substance exceeded 25 pounds (now 10 kilograms). Now there is also a 15-year enhancement if the substance exceeds 20 kilograms.

(1989) 209 Cal.App.3d 349, 354 [257 Cal.Rptr. 356].) The statute "must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. [Citations.]" (*Beaty* v. *Imperial Irrigation Dist.* (1986) 186 Cal.App.3d 897, 902 [231 Cal.Rptr. 128].)

We turn first to the words of the statute. The enhancement states it applies when the defendant is convicted of a conspiracy to sell methamphetamine "where the *substance* exceeds three pounds by weight" (italics added). (Health & Saf. Code, § 11370.4, former subd. (b)(1).) The statute lists three substances, i.e., methamphetamine, amphetamine and PCP and its analogs. It thus follows the term "substance" refers to one of these enumerated drugs and not to unspecified precursor chemicals, such as ephedrine.

The enhancement applies if the "substance *exceeds* three pounds by weight." Implicit in this statement, in its use of the present tense of the word "exceed," is a presently existing substance (methamphetamine, amphetamine or PCP) which can be weighed and which weighs more than three pounds.[4] The statute does not state, as the Attorney General suggests, that the enhancement applies if a person, convicted of a conspiracy to sell methamphetamine, *planned* to make more than three pounds of the substance; the enhancement applies when there is conviction of conspiracy to sell methamphetamine and the methamphetamine (actually existing) exceeds three pounds in weight.

The Attorney General asserts: "The plain meaning of section 11370.4 does not require that the substance a defendant conspires to sell must exist at the time of arrest. It simply indicates that when a person is convicted for certain criminal activity involving listed substances, the weight enhancement *will apply if the substance exceeds a certain weight.*" (Italics added.)

This argument ignores how a listed substance can "exceed" a certain weight if there is none in existence. Further, the different weight enhancements of Health and Safety Code section 11370.4 would be rendered meaningless if the enhancement is applicable when there is no existing substance but only a plan to obtain it.

The Attorney General cites express legislative intent in the enactment of the weight enhancements: "It is the intent of the Legislature in enacting

---

[4]The weight of the substance may include cutting agents; it is not necessary the weight exceed three pounds in its pure form. (See *People* v. *Pieters* (1991) 52 Cal.3d 894, 903 [276 Cal.Rptr. 918, 802 P.2d 420].)

Sections 3 and 4 of this act to punish more severely those persons who are in the regular business of trafficking in, or production of, narcotics and those persons who deal in large quantities of narcotics as opposed to individuals who have a less serious, occasional, or relatively minor role in this activity." (Stats. 1985, ch. 1398, § 1, p. 4948.)

The Attorney General concludes Lopez "plainly falls within the category of persons the Legislature intended to punish more severely" because Lopez's purchase of 30 pounds of ephedrine which could produce 20 pounds of methamphetamine "posed a significant danger to public health and safety." It may certainly be true that Lopez's purchase and plan to sell methamphetamine may pose "a significant danger" but it does not necessarily follow that the enhancement should apply. The Legislature could rationally determine that persons who actually trafficked in or produced significant quantities of the enumerated drugs should receive more severe punishment than persons who merely planned to produce or traffic in significant quantities.

A construction which requires presently existing methamphetamine, amphetamine or PCP before the enhancement may be applied does not render the conspiracy language mere surplusage since a defendant may be convicted of conspiracy in situations where there is a measurable amount of the controlled substance. (See, e.g., *People* v. *Garcia* (1992) 3 Cal.App.4th 582 [4 Cal.Rptr.2d 539].)

We conclude the Health and Safety Code section 11370.4, former subdivision (b)(1) weight enhancement should not have been applied here because there was no methamphetamine involved which exceeded three pounds in weight. Therefore, we order the section 11370.4, former subdivision (b)(1) enhancement stricken. Because we have ordered the weight enhancement stricken, we need not address Lopez's additional contention the enhancement was invalid because the jury failed to make a separate, express finding that he was substantially involved in the conspiracy to sell methamphetamine.

II

*Overt Act Finding*

Lopez contends his conviction of conspiracy to sell methamphetamine must be reversed because "the jury failed to find true any of the overt acts."

■ To sustain a conviction for conspiracy, the prosecution must show the conspirators intended to agree or conspire and intended to commit the offense which is the object of the conspiracy. (*People* v. *Horn* (1974) 12 Cal.3d 290, 296 [115 Cal.Rptr. 516, 524 P.2d 1300].) The prosecution must also allege and prove that one or more of the parties to the agreement committed some overt act (besides the agreement itself) in furtherance of the conspiracy. (Pen. Code, § 182, subd. (b); *People* v. *Anderson* (1991) 1 Cal.App.4th 1084, 1090 [3 Cal.Rptr.2d 247].)

■ Lopez argues the jury was required to make an express, specific finding that at least one of the ten overt acts alleged was true. There is no merit to this contention. It is well established that a jury is not required to be instructed they must unanimously agree on the overt acts alleged before returning a guilty verdict; so long as each juror is convinced beyond a reasonable doubt that the defendant committed one of the overt acts and is guilty of conspiracy it is irrelevant that the jurors differed on which overt acts they believed the defendant committed. (See *People* v. *Von Villas* (1992) 11 Cal.App.4th 175, 233-235 [15 Cal.Rptr.2d 112]; *People* v. *Cribas* (1991) 231 Cal.App.3d 596, 611-612 [282 Cal.Rptr. 538]; *People* v. *Jones* (1986) 180 Cal.App.3d 509, 515-517 [225 Cal.Rptr. 697]; but see *People* v. *Ramirez* (1987) 189 Cal.App.3d 603, 611-615 [233 Cal.Rptr. 645].) Since the jury need not be instructed they must unanimously agree on which overt act(s) the defendant committed, it follows a jury is not required to return a special verdict expressly finding the defendant committed any particular overt act.

III

*Instruction on Reasonable Doubt*

■ In a supplemental opening brief, Lopez, citing *Cage* v. *Louisiana* (1990) 498 U.S. 39 [112 L.Ed.2d 339, 111 S.Ct. 328], contends the court's giving of CALJIC No. 2.90 which defines reasonable doubt in terms of "moral certainty" deprived him of due process and the right to a fair trial. Our California Supreme Court has rejected this argument (see *People* v. *Sandoval* (1992) 4 Cal.4th 155, 185-186 [14 Cal.Rptr.2d 342, 841 P.2d 862];[5] *People* v. *Jennings* (1991) 53 Cal.3d 334, 385-386 [279 Cal.Rptr. 780, 807 P.2d 1009]) and under the doctrine of *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937], we are bound by the California Supreme Court's decision.

[5]The United States Supreme Court has recently decided to review the decision in *Sandoval*. (*People* v. *Sandoval, supra*, 4 Cal.4th 155, cert. granted Sept. 28, 1993, *Sandoval* v. *California* __ U.S. __ [125 L.Ed.2d 789, 114 S.Ct. 40].)

## DISPOSITION

The Health and Safety Code section 11370.4 enhancement is stricken. In all other respects, the judgment is affirmed.

Work, J., and Todd, J., concurred.