[No. B086776. Second Dist., Div. One. Apr. 7, 1995.]

GERVACIO VALENZUELA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

1446

**COUNSEL**

Tom Stanley for Petitioner.

No appearance for Respondent.

Gil Garcetti, District Attorney, Brent Riggs and Joseph N. Sorrentino, Deputy District Attorneys, for Real Party in Interest.

## Opinion

## MASTERSON, J.—

### Introduction

Under Health and Safety Code section 11370.4, subdivision (a),[1] a person convicted of certain drug offenses must receive a sentence enhancement based on the weight of the drug involved. The enhancement, an additional prison term ranging from three to twenty-five years, increases at specified intervals as the weight of the drug increases.

In the trial court, petitioner-defendant moved to strike the sentence enhancement allegations on three counts in the information. His motion was denied. By petition for writ of mandate, he challenges the trial court's ruling.

Two of the sentence enhancements sought against petitioner are based on the amount of heroin he allegedly *offered* to sell, not on the lesser amount the police actually seized. The third enhancement is based on the weight of cocaine he allegedly agreed to sell, although the police found no cocaine at all. Petitioner argues that all three enhancements are improper under section 11370.4, subdivision (a) because they are not based on the weight of an existing substance that he either sold or possessed.

The People read the sentence enhancement statute more broadly. They contend that where a defendant offers to sell more of a drug than he actually sells, the sentence enhancement should be based on the higher, negotiated amount. Similarly, even if no drug exists at all, the enhancement should be based on the quantity that the defendant said he would provide.

We hold that sentence enhancements under section 11370.4, subdivision (a) must be based on the weight of a substance in existence, not on an amount merely offered or negotiated.

### Background

Petitioner Gervacio Valenzuela and codefendant Fileberto Aceves Reynaga were charged by complaint with several felony drug offenses. At a preliminary hearing on July 6, 1994, the People produced one witness, Louis Perez, a police officer with the Inglewood Police Department for 19 years. Perez had been assigned to the narcotics division for eight and one-half years

---

[1]Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

and had made hundreds of arrests involving the sale of narcotics. At the hearing, he testified as follows.

In May 1994, Perez spoke with a government informant, who had met with Reynaga several times in the preceding two months. On or about March 28, 1994, Reynaga had met with the informant and discussed selling him five or six kilograms of heroin. Three weeks later, the informant again met with Reynaga and was introduced to petitioner Valenzuela. In Reynaga's presence, the informant talked to Valenzuela about purchasing heroin, and Valenzuela also offered to give the informant five kilograms of cocaine on credit.

On May 25, 1994, the informant received a telephone page and called the number on his pager. He recognized the voice on the other end of the telephone as Valenzuela's. During the conversation, Valenzuela told the informant that the heroin was ready to be picked up. Later that day, Officer Perez went to the prearranged location for the heroin deal, where he saw Reynaga and the informant. Perez searched the premises and found a substance that contained 974.3 grams of heroin.[2] No cocaine was recovered. A search of Reynaga's wallet produced a business card bearing Valenzuela's name and address. Perez went to that address and arrested Valenzuela. Based on his training and experience, Perez concluded that both defendants had possessed the heroin for sale.

At the conclusion of the preliminary hearing, defendants were held to answer. Thereafter, the People filed an information containing four charges: (1) count 1 alleged that defendants possessed a controlled substance (heroin) for sale, in violation of section 11351;[3] (2) count 2 alleged that defendants transported, offered to sell, and sold heroin, in violation of section 11352;[4] (3) count 3 charged defendants with a conspiracy (Pen. Code, § 182, subd. (a)(1)) to commit the crime of transportation, possession for sale, offer to sell, and sale of heroin, in violation of sections 11351 and 11352;[5] and (4)

---

[2] For purposes of the preliminary hearing only, the parties stipulated that the substance contained 974.3 grams of heroin, 25.7 grams short of a kilogram.

[3] Section 11351 provides that any person who possesses certain controlled substances for sale, including heroin, "shall be punished by imprisonment in the state prison for two, three, or four years."

[4] Section 11352, subdivision (a) provides in part that any person who sells, transports, or offers to sell certain controlled substances, including heroin, "shall be punished by imprisonment in the state prison for three, four, or five years."

[5] Penal Code section 182, subdivision (a)(1) makes it a crime for two or more persons to conspire to commit any other crime.

count 4 alleged that defendants offered to sell cocaine, in violation of section 11352.[6]

The information also sought sentence enhancements under section 11370.4, subdivision (a). That statute provides in part that "[a]ny person convicted of a violation of, or of a conspiracy to violate, Section 11351 . . . or 11352 with respect to a substance containing heroin . . . or cocaine . . . shall receive an additional term as follows: [¶] (1) Where the substance exceeds one kilogram by weight, the person shall receive an additional term of three years. [¶] (2) Where the substance exceeds four kilograms by weight, the person shall receive an additional term of five years."

On count 2 (charging defendants with offering to sell, transporting, and selling heroin), the information alleged that the "substance" exceeded one kilogram by weight, thus mandating an additional term of three years. Count 3 (charging defendants with a conspiracy) contained the same sentence enhancement allegations as count 2. On count 4 (charging defendants with offering to sell cocaine), the information alleged that the "substance" exceeded four kilograms by weight, thus mandating an additional term of five years.

On August 16, 1994, defendants filed a motion challenging the information on several grounds, including the lack of evidence to support the sentence enhancements. The trial court denied the motion. Valenzuela then filed a petition for writ of mandate with this court, which was summarily denied.[7] Valenzuela subsequently sought review in the California Supreme Court. On December 15, 1994, the Supreme Court granted review and transferred the matter to this division with directions to issue an alternative writ.[8] The alternative writ having been issued, and the parties having briefed and argued the matter, we address the validity of the sentence enhancements.

## DISCUSSION

■ Under section 11370.4, subdivision (a), the minimum sentence enhancement of three years requires that "the substance exceed[] one kilogram

---

[6]Cocaine is among the controlled substances covered by section 11352. (See also fn. 4, *ante*.)

[7]The petition sought a writ of mandate directing the trial court to strike the sentence enhancements. It also sought to set aside the information on the grounds that the evidence at the preliminary hearing was speculative and conjectural and that the testimony of Officer Perez constituted inadmissible hearsay.

[8]Because the sentence enhancement issue was the only matter raised in the petition for review, it is arguably the sole issue before us. In any event, we find Valenzuela's other contentions (see fn. 7, *ante*) to be without merit.

by weight." Although the heroin seized in this case weighed less than a kilogram, the People contend that an enhancement is proper on counts 2 and 3 because Valenzuela *negotiated* the sale of more than a kilogram. Similarly, while no cocaine was found, the People seek a five-year enhancement on count 4 because Valenzuela *offered* to sell more than four kilograms of that drug.

Valenzuela counters that the sentence enhancements are improper because section 11370.4, subdivision (a) applies only to an existing substance which, when actually weighed, exceeds the quantity specified in the statute.

Based on the language of the statute, the case law construing it, and the statute's legislative history, we conclude that sentence enhancements under section 11370.4, subdivision (a) must be based on the weight of an existing substance.

"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. . . . In order to determine this intent, we begin by examining the language of the statute. . . . But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' " (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420], citations omitted.) "The words of a statute will not be literally construed . . . if it would fail to give effect to the manifest purposes of the statute in light of its legislative history." (*Granberry* v. *Islay Investments* (1984) 161 Cal.App.3d 382, 388 [207 Cal.Rptr. 652].) Undoubtedly, legislative history, including the reports of legislative committees, is a valuable aid in divining the purpose of a statute. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]; *People* v. *Heston* (1991) 1 Cal.App.4th 471, 476 [2 Cal.Rptr.2d 26].)

At first glance, a literal reading of section 11370.4, subdivision (a) would appear to support the interpretation urged by the People. By way of example, section 11352 prohibits, among other things, offering to sell cocaine, an offense which does not require that a drug actually exist: the crime "is complete when an offer is made with the accompanying requisite intent." (*People* v. *Encerti* (1982) 130 Cal.App.3d 791, 800-801 [182 Cal.Rptr. 139].) By its express terms, section 11370.4, subdivision (a) mandates sentence enhancements for the offenses covered by section 11352. Thus, when Valenzuela allegedly offered to sell five kilograms of cocaine in violation of section 11352, the pertinent "substance exceed[ed] four kilograms by weight" under section 11370.4, arguably requiring a sentence

enhancement of five years. Indeed, section 11370.4 does not expressly state that the "substance" must exist.

However, on closer examination, a literal construction of the sentence enhancement statute, as applied to section 11352, would lead to anomalous consequences. Section 11352 prohibits not only *offering* to sell but also selling a controlled substance—two distinct crimes. (See fn. 4, *ante.*) Here, count 2 charges Valenzuela with both offenses as to the heroin transaction. Under well established principles, offering to sell is a lesser included offense of selling. (See *People* v. *Lagunas* (1994) 8 Cal.4th 1030, 1034 [36 Cal.Rptr.2d 67, 884 P.2d 1015]; cf. *People* v. *Tinajero* (1993) 19 Cal.App.4th 1541, 1547 [24 Cal.Rptr.2d 298].) Thus, one would expect that offering to sell would carry a lesser penalty than selling.

But this reasonable expectation has no place under the People's interpretation of section 11370.4. If the People prosecute Valenzuela under count 2 for the offense of selling, then the "substance"—that which he allegedly sold—weighs less than a kilogram, and a sentence enhancement is not permitted. Yet, by pursuing Valenzuela under the same count and the same statute (section 11352) for the lesser included offense of offering to sell, the People would be able to seek an additional three-year term based on the alleged amount negotiated (i.e., more than a kilogram). This result stands the concept of lesser included offenses on its head, thus yielding an unreasonable construction of the statute. (See *People* v. *Henson* (1991) 231 Cal.App.3d 172, 180 [282 Cal.Rptr. 222] [if one alternative interpretation of statute leads to unreasonable result, court should reject that interpretation in favor of another].)

Further, the case law construing section 11370.4 substantially undercuts the People's position.

In *People* v. *Pieters*, *supra*, 52 Cal.3d 894, the Supreme Court considered whether sentence enhancements under section 11370.4, subdivision (a) should be based on the weight of a drug in its pure form or on the total weight of a mixture containing both the pure drug and a cutting agent. The court held that ". . . enhancements under that section are triggered by the weight of a mixture containing the drug and not merely by the weight of the pure drug itself." (52 Cal.3d at p. 903.) In reaching this conclusion, the court quoted the Court of Appeal with approval for the proposition that " '[t]he focus is on the quantity, not the quality, of the drug *seized.*' " (*Ibid.*, italics added, original italics omitted.) Thus, while *Pieters* did not address the precise issue before us, it suggests that sentence enhancements must be based on a substance in existence, i.e., one capable of being "seized."

More on point is *People* v. *Lopez* (1993) 20 Cal.App.4th 897 [24 Cal.Rptr.2d 649]. There, the defendant was convicted of a conspiracy to sell methamphetamine. During the conspiracy, the defendant had agreed to sell more than three pounds of the drug a week. Based on that circumstance, the trial court imposed a sentence enhancement of three years pursuant to section 11370.4, subdivision (b).[9] However, although the defendant possessed several pounds of a precursor chemical used to manufacture methamphetamine, no "finished product" (i.e., methamphetamine) existed or was seized.

In ordering that the sentence enhancement be stricken, the court stated: "The enhancement applies if the 'substance *exceeds* three pounds by weight.' Implicit in this statement, in its use of the present tense of the word 'exceed,' is a presently existing substance (methamphetamine . . .) which can be weighed and which weighs more than three pounds. The statute does not state, as the Attorney General suggests, that the enhancement applies if a person, convicted of a conspiracy to sell methamphetamine, *planned* to make more than three pounds of the substance; the enhancement applies when there is [a] conviction of conspiracy to sell methamphetamine and the methamphetamine (actually existing) exceeds three pounds in weight." (20 Cal.App.4th at p. 902, italics in original, fn. omitted.)

Together, *Pieters* and *Lopez* indicate that a literal reading of section 11370.4, subdivision (a) requires sentence enhancements to be based on the weight of an existing substance, not on a quantity merely offered or negotiated.

Case law aside, the People claim that the legislative history of section 11370.4 supports their position. To the contrary, the legislative record convinces us that sentence enhancements must be based on the weight of an existing substance.

Enacted in 1985, section 11370.4 is intended "to punish more severely those persons who are in the regular business of trafficking in, or production of, narcotics and those persons who deal in large quantities of narcotics as

---

[9]As stated, the issue before us requires an interpretation of subdivision (a) of section 11370.4. While *Lopez* involved subdivision (b) of that statute, the pertinent language of the two subdivisions is virtually identical. At the time of the offense in *Lopez*, subdivision (b) provided that any person convicted of a conspiracy to sell a substance containing methamphetamine " 'shall receive an additional term as follows: [¶] (1) Where the substance exceeds three pounds by weight . . . , the person shall receive an additional term of three years.' " (20 Cal.App.4th at p. 901, italics omitted.) In 1992, the Legislature amended section 11370.4 to change the measurements to the metric system (e.g., "pounds" to "kilograms"). (Stats. 1992, ch. 680, § 1.)

opposed to individuals who have a less serious, occasional, or relatively minor role in this activity." (Stats. 1985, ch. 1398, § 1, p. 4948.)[10] In analyzing the proposed legislation, the Senate Committee on the Judiciary recognized the need to authorize longer prison sentences for "major drug dealers." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2320 (1985-1986 Reg. Sess.) p. 4.) In that regard, the committee report discussed the facts of three recent drug prosecutions in Los Angeles County; for each one, the report emphasized the weight of the drugs actually recovered. (*Id.* at pp. 4-5.) The report also noted that "[t]his bill would provide enhancements based on the quantity of [the] substance *seized.*" (*Id.* at p. 7, italics added.)

In 1989, the Legislature broadened the scope of section 11370.4 by mandating sentence enhancements for conspiracies. (See Stats. 1989, ch. 1326, § 2.5, pp. 5327-5328.) In explaining the need for the amendment, the Senate Committee on the Judiciary stated: "Some of the most useful prosecutorial tools in major narcotics statutes are the enhancements based upon the amount of narcotics *seized* . . . . [¶] However, under current law these enhancements do not apply to conspiracies. Many leaders of large narcotics trafficking organizations do not *personally handle* the narcotics. As a result they are often convicted of conspiracy while their underlings are convicted of the substantive narcotics offense. This leads to the inequitable result that the leader of the organization receives a lesser sentence . . . than his underlings who are subject to the quantity . . . enhancements." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2448 (1989-1990 Reg. Sess.) p. 2, italics added.)

Obviously, a drug must exist in some physical form before it can be "seized" by the police or "personally handled" by low-level conspirators. Accordingly, we find that the legislative history of section 11370.4, as originally enacted in 1985 and as amended in 1989, supports the view that sentence enhancements must be based on the weight of an existing substance.[11]

Nothing in *U.S.* v. *Frazier* (9th Cir. 1993) 985 F.2d 1001, on which the People rely, persuades us otherwise. In *Frazier*, the defendant was convicted under federal law of conspiracy to possess cocaine with intent to distribute. His sentence was based on the amount of cocaine he *attempted* to buy (2

---

[10]As originally enacted, section 11370.4, subdivision (a) stated that "[a]ny person convicted of a violation of Section 11351 or 11352 with respect to a substance containing heroin or cocaine shall receive an additional term . . . ." (Stats. 1985, ch. 1398, § 3, pp. 4948-4949.) Thus, the statute did not authorize enhancements for conspiracies.

[11]The People contend that if we interpret section 11370.4 to require a substance in existence, then conspirators will be subject to a sentence enhancement only if they personally handle the drugs. This argument is a non sequitur. Our analysis is not in conflict with the statute's 1989 amendment, which extended sentence enhancements to conspirators regardless of whether they physically possess the controlled substance.

kilograms), not on the smaller quantity he actually purchased (5.2 grams less than 2 kilograms). However, the federal sentencing guidelines explicitly mandated such a result. They provide: "If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount." (*Id.* at p. 1002, quoting U.S. Sentencing Commission, Guidelines Manual (1991) § 2D1.4(a), com. (n. 1).) Because the language of the California sentence enhancement statute is significantly different from that of the federal sentencing guidelines, *Frazier* is inapposite.[12]

Nor is *People* v. *Good* (1990) 217 Cal.App.3d 1533 [266 Cal.Rptr. 608] applicable here. In that case, the police seized a solid substance containing 426 grams of methamphetamine and a flask containing a solution. By completing the cooking process on the solution, a criminologist was able to obtain 264 additional grams of methamphetamine. The question before the court was whether a sentence enhancement could be based on the combined weight of the methamphetamine recovered in both forms. In answering that question in the affirmative, the court did not even suggest that sentence enhancements could be based solely on offered or negotiated amounts of a controlled substance. *Good* involved an existing substance, albeit one existing partly as a solid and partly as a liquid.

Finally, the People argue that public policy favors a broad interpretation of the sentence enhancement statute. They claim that under Valenzuela's reasoning, the timing of the drug seizure would become all important. (Cf. *People* v. *Good, supra,* 217 Cal.App.3d at p. 1537 [sentence enhancement can be based on seizure of solution containing drug in unfinished, liquid form]; *People* v. *Jackson* (1990) 218 Cal.App.3d 1493, 1503-1504 [267 Cal.Rptr. 841] [conviction for manufacturing phencyclidine (PCP) does not require existence of PCP since language of applicable statute prohibits not only manufacturing but also producing or processing PCP].)

We recognize, for instance, that the police may intervene in a drug conspiracy before any drugs exist, thus precluding the use of sentence

---

[12]The People correctly note that section 11370.4 was intended to close the gap between state and federal sentences: "major drug dealers will no longer have [an] incentive to traffic in California where sentences are significantly lighter than those meted out in federal court." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2320, *supra,* p. 4.) However, we cannot infer from this statement of general purpose that the Legislature intended sentence enhancements to be based solely on a negotiated amount rather than the weight of an existing substance. Further, we do not read the legislative history of section 11370.4 as somehow incorporating the federal sentencing guidelines' explicit instruction to consider negotiated amounts in determining a sentence. Those guidelines did not go into effect until two years after section 11370.4 was enacted. (See U.S. Sentencing Commission, Guidelines Manual (Nov. 1989) § 2D1.4, Historical Note [guidelines became effective Nov. 1, 1987].)

enhancements.[13] But the purpose of section 11370.4 is to punish more severely those persons who are in the "regular business" of producing certain drugs and those "who deal in large quantities of narcotics." (Stats. 1985, ch. 1398, § 1, p. 4948.) "The Legislature could rationally determine that persons who actually . . . produced significant quantities of the enumerated drugs should receive more severe punishment than persons who merely planned to produce . . . significant quantities." (*People* v. *Lopez*, *supra*, 20 Cal.App.4th at p. 903.)

Thus, based on the language and history of the statute, we conclude that section 11370.4, subdivision (a) requires that sentence enhancements be based on the weight of an existing substance. Where the offense involves no drug in existence (here, count 4), the statute does not permit any enhancement. Where the offense involves two different quantities—the weight of an existing substance and the weight offered or negotiated (here, counts 2 and 3)—the sentence enhancement must be based on the former.

In closing, we emphasize what is not before us. First, we have not addressed how the People may prove the weight of a substance. While we have used the term "weight," as does section 11370.4 itself, we do not suggest that the sole method of determining quantity is by actually weighing a substance. Second, our reference to the "seizure" of a drug does not mean that sentence enhancements are necessarily limited to the weight of what the police recover. We have used the term "seized" simply to indicate that under section 11370.4, subdivision (a), a substance must have physically existed at some point in time. Here, the police apparently seized all of the heroin that existed. The People did not contend at the preliminary hearing that some of the heroin was lost, destroyed, or not found for other reasons. Thus, we express no opinion on the statute's operation where the police do not seize a substance in its entirety. Finally, we do not reach any issues concerning the location of a substance at the time an offense is committed, e.g., whether the substance, in whole or in part, must be found at the crime scene. (Cf. *People* v. *Howard* (1995) 33 Cal.App.4th 1407, 1412, 1416-1417 [39 Cal.Rptr.2d 766] [in reverse sting operation, where defendants convicted of conspiracy to purchase cocaine for sale, sentence enhancement permissibly based on seven kilograms of cocaine even though only one kilogram present at scene of crime; police could have obtained six additional kilograms].)

---

[13]It deserves repeating that the issue we decide today involves *sentence enhancement*. We do not decide what is necessary to sustain a conviction for any offense. By definition, a sentence enhancement does not come into play until after a conviction has been obtained. Nor does this case present any issues concerning the initial or base term imposed for a crime. (See Cal. Rules of Court, rule 405(b) [defining "base term"].) We are concerned solely with additional punishment over and above the base term.

## DISPOSITION

Let a peremptory writ of mandate issue, commanding respondent court to vacate its order denying that portion of petitioner's motion seeking to strike the sentence enhancements under section 11370.4, subdivision (a) and to enter a new and different order granting that portion of the motion. In all other respects, the petition is denied.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.

A petition for a rehearing was denied May 3, 1995, and the opinion was modified to read as printed above.